UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

ALBERT TROSTEL & SONS COMPANY,

        Plaintiff,

        v.                           Case No. 07-C-0763

EDWARD U. NOTZ,
SANDRA KEEP NOTZ,

        Defendants.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
STRIKE INSUFFICIENT DEFENSES AND DISMISS COUNTERCLAIMS

        Albert Trostel & Sons Company (ATS) filed a complaint with this court on
August 23, 2007, seeking a determination of the fair value of the defendants' shares of
stock, pursuant to the Dissenter's Rights provision of the Wisconsin Business Corporation
Law, Wisconsin Statutes § 180.1330. On September 13, 2007, the defendants filed an
Answer and Affirmative Defenses, which included an assertion that this court lacks subject
matter jurisdiction over the claim. ATS has filed a motion to Strike Insufficient Defenses
and Dismiss Counterclaims, which is now before the court.

BACKGROUND

        The parties have tendered the following uncontested facts.

        ATS is a Wisconsin corporation that has its principal place of business in
Milwaukee, Wisconsin. (Ans. ¶ 1.) Defendants Edward U. Notz and Sandra Keep Notz
(collectively "the Notz Interests") are citizens of Illinois. (Ans. ¶¶ 2-3.) Ms. Notz is named
only in her capacity as Successor Trustee of the Trust under Agreement with Clara U.
Trostel, dated December 24, 1938 (The Trust). (Joint Disc. Report 1.)

On the effective date of the merger that gave rise to this action, Mr. Notz beneficially owned approximately 5.5% of the outstanding shares of ATS. (Ans. ¶ 17.) The other former minority shareholders in ATS owned approximately 5.7% of the shares. (Ans. ¶ 17.) Everett Smith Group, Ltd. (ESG) was ATS's majority shareholder and owned approximately 88.9% of the common stock of ATS. (Ans. Ex. A, ¶ 2.) On May 17, 2007, pursuant to a plan of merger, ATS merged with a wholly-owned subsidiary of ESG. (Ans. ¶ 8.) ATS, as the surviving corporation, became a wholly-owned subsidiary of ESG. (Ans. ¶ 8.) The plan of merger provided that the shares of common stock held by the ATS minority shareholders would be converted to cash. (Ans. ¶ 9.) ATS's bylaws required that the merger be approved by a special committee comprised of three independent directors. (Ans. ¶ 10.) The special committee hired outside counsel to advise it in the process and engaged Duff & Phelps, LLC (D&P) to determine the fair value of ATS and of its stock. (Ans. ¶¶ 10, 11.) D&P concluded that the fair value of ATS's common stock was $11,900 per share. (Ans. ¶ 12.) As a consequence, D&P issued a written opinion indicating that, as of April 25, 2007, the consideration of $11,900 per share was, from a financial point of view, fair to the minority shareholders. (Ans. ¶ 14.) ATS's board approved the plan of merger on April 25, 2007, determining that the merger was fair and in ATS's best interests. (Ans. ¶15.) Additionally, the ATS board recommended that shareholders approve the plan of merger. (Ans. ¶ 15.) At a ATS special shareholders' meeting, only Mr. Notz and Ms. Notz voted against the merger. (Ans. ¶ 18.)

Mr. Notz timely exercised his statutory right to dissent from the merger, as did Ms. Notz, as trustee. (Ans. ¶¶ 18, 21, 24.) On June 25, 2007, ATS paid Mr. Notz $11,900 for each of the shares that had been beneficially owned totaling $7,659,625.40,

2

plus interest of $51,623.78. (Ans. ¶ 20.) The Trust received $5,652,500.00, plus interest of $28,096.30. (Ans. ¶ 20.) Mr. Notz and Ms. Notz notified ATS of their estimate of the fair share value and claimed entitlement to $21,578 per share. Mr. Notz demanded the additional amount of $6,229,399.55, plus interest, and Ms. Notz, as trustee, made a demand for the additional amount of $4,597,050.00, plus interest. (Ans. ¶ 21.)

Before the merger, in June 2004, ESG became aware of an opportunity to acquire the business of Dickten & Masch Manufacturing Company (Dickten & Masch), which was in the same line of business as ATS's subsidiary, Trostel Specialty Elastomers Group, Inc. (Trostel SEG). (Ans. Ex. A, ¶¶ 13, 30.) The officers and directors of ATS decided not to acquire Dickten & Masch, and in October 2004, ESG acquired the business. (Ans. Ex. A, ¶ 37.) In 2005, ESG's Dickten & Masch affiliate purchased Trostel SEG's plastics manufacturing assets. (Ans. Ex. A, ¶¶ 43, 44.)

On August 9, 2005, Mr. Notz served a shareholder demand letter on ATS. (McManus Decl. ¶ 2, Ex. 1, Ex. A.) In his demand letter, Mr. Notz claimed that ESG and the directors of ATS (and of Trostel SEG) had breached their fiduciary duties to ATS and its minority shareholders. (McManus Decl. ¶ 2, Ex. 1, Ex. A.) The letter further contended that (1) ESG's purchase of the Dickten & Masch business usurped an ATS (and Trostel SEG) corporate opportunity; (2) the sale of Trostel SEG's plastics manufacturing business was not fair in price or process; (3) ATS had refused to disclose its administrative expenses to minority shareholders; (4) ATS's pension interests were transferred to ESG without disclosure, justification, or explanation; and (5) certain unsuccessful negotiations by ESG to buy Mr. Notz' shares had not been conducted in good faith. (McManus Decl. ¶ 2, Ex. 1, Ex. A.)

3

In response to Mr. Notz' demand letter, three unaffiliated directors were elected to the ATS board. Those directors appointed themselves to a Special Litigation Committee (SLC) for the purpose of investigating Mr. Notz' derivative claim. (McManus Decl. ¶ 2, Ex. 1, 1.) However, the SLC concluded not to pursue any claims.[1]

On April 6, 2006, Mr. Notz filed an action in the circuit court for Milwaukee County against ESG and individual officers and directors of ATS for breach of fiduciary duty and shareholder oppression. (McManus Decl. ¶ 3, Ex. 2.) The circuit court dismissed all of these claims on September 14, 2006, finding that the breach of fiduciary duty claims were derivative claims that Mr. Notz could not assert in his individual capacity, and that Mr. Notz had not alleged any distinct injury to himself that would support a direct claim for breach of fiduciary duty. (McManus Decl. ¶ 5, Ex. 4.)

On September 29, 2006, Mr. Notz filed an amended complaint against ESG and the individual officers and directors of ATS for breach of fiduciary duty and a request for judicial dissolution under Wis. Stat. § 180.1430(2)(b), based on shareholder oppression. (Ans. Ex. A, ¶¶ 60-98.) Again, the circuit court dismissed the breach of fiduciary claims holding that they were derivative and could not be brought by an individual shareholder. (McManus Decl. ¶ 6, Ex. 5.) But, the circuit court did not dismiss the dissolution claim for alleged shareholder oppression. (McManus Decl. ¶ 6, Ex. 5.) The circuit court's decisions are on appeal before the Wisconsin Court of Appeals.

On August 23, 2007, ATS filed a complaint in this court pursuant to Wisconsin Statutes § 180.1330(1) for a determination of the fair value of the Notz Interests'

---

[1] The Notz Interests challenge (or do not admit to) facts proposed by ATS relating to the composition of the SLC, the independence of the SLC, the findings of the SLC, and related matters. (See Defs.' Resp. to Pl.'s Proposed Findings of Fact.)

4

shares. The parties agree that all relevant conditions precedent to the commencement of an appraisal action have been met. (Ans. 9.)

In their Answer, the Notz Interests lumped five affirmative defenses and counterclaims under the heading: "Affirmative Defenses and Counterclaims."

(1) The Court lacks subject matter jurisdiction over this special proceeding.

(2) This action is subject to the doctrine of abstention because a similar proceeding is pending in the state court, on appeal from the circuit court's decision on a motion to dismiss, *Notz v. Everett Smith Group*, et al., Milwaukee County Case No. 06-CV-3068, Appeal No. 2006-AP-3156, and this action may interfere with the jurisdiction of the state court to provide full and complete relief.

(3) The value of the shares of Albert Trostel & Sons Company owned by Edward U. Notz, directly and beneficially, was directly reduced by the misconduct of those in control of Albert Trostel & Sons Company. This misconduct includes, but is not limited to, the following:

(a) The decision by the board of directors of Albert Trostel & Sons Company not to pursue an acquisition of Dickten & . . . [Masch] Manufacturing Company, but instead to allow the majority shareholder of Albert Trostel & Sons Company, the Everett Smith Group, Ltd., to make that acquisition;

(b) The decision by the board of directors of Albert Trostel & Sons Company to sell the operating assets of a wholly-owned subsidiary, Trostel Specialty Elastomers Group ("SEG") to the Everett Smith Group, Ltd.;

(c) Upon information and belief, improper increases in the SG&A expenses of ATS in 2002 and 2003 and thereafter through (i) increased "management fees" paid by ATS to the Everett Smith Group, Ltd., (ii) excessive compensation and benefits paid to officers and directors of ATS, and/or (iii) other means;

(d) The failure of Albert Trostel & Sons Company, in adopting the D&P valuation as part of the merger proceedings, to discount and eliminate any management fees paid by ATS to the Everett Smith Group, Ltd., and other similar expenses and costs, that would not be incurred

5

after ATS became a wholly-owned subsidiary of the Everett Smith Group, Ltd.;

(e) The improper co-mingling of ATS pension funds with pension funds run by and through the Everett Smith Group, Ltd.;

(f) Upon information and belief, the misappropriation of other expenses shared by Albert Trostel & Sons Company and the Everett Smith Group, Ltd.; and

(g) Knowing of the pending state court litigation and the decision of the trial court in that proceeding that the oppression claim stated a cause of action and that the potential relief in such an oppression action includes the sale of ATS's interests and/or the stock of ATS, failed to tender the same to independent third parties and sell the same to one such independent third party.

(4) Plaintiff failed to properly commence a special proceeding in the circuit court for the county in which its principal office is located.

(5) Upon information and belief, Albert Trostel & Sons Company acted arbitrarily, vexatiously and not in good faith with respect to the rights provided by Chapter 180 of the Wisconsin Statutes.

ATS now moves to strike or dismiss each of the affirmative defenses/claims asserted by the Notz Interests.

DISCUSSION

I. Standard of Review

Typically, in a motion to strike pursuant to Rule 12(f), "[a]ffirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir.1989). Motions to strike are generally "not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (*citing Glenside W.Corp. v. Exxon Co.*, 761 F.Supp. 1100, 1115 (D.N.J. 1991)). "The purpose of such narrow

6

standards is to provide a party the opportunity to prove his allegations if there is a possibility that his defense or defenses may succeed after a full hearing on the merits." *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975); *see also Heller Fin.*, 883 F.2d at 1294 ("Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact. Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." (internal citations omitted)).

"A complaint or counterclaim is subject to dismissal under Rule 12(b)(6) only if the nonmoving party can prove no set of facts consistent with its complaint or counterclaim that would entitle it to relief." *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995) (*quoting Warzon v. Drew*, No. 94-2687, 1995 WL 422847 (7th Cir. July 19, 1995). In reviewing a dismissal under Rule 12(b)(6), the district court is "obliged to accept all well pleaded facts alleged in the counterclaim as true and draw all reasonable inferences in favor of the nonmoving party." *Id.*

ATS requests that, given the presence of undisputed facts, the court treat its motion as one for summary judgment. (Pl.'s Mot. 3.) Both parties have submitted briefs, proposed findings of fact, and affidavits supporting their positions, and ask for a ruling on the merits of the Notz Interests' proposed defenses and claims. Therefore, in so far as the matter has been developed by the parties, the court will dispose of the motion on a summary judgment standard unless otherwise stated, while noting that this action has just passed the pleading stage.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II. Subject Matter Jurisdiction (Defense/Claim #1)

The first affirmative defense/claim as asserted by the Notz Interest is that this court lacks subject matter jurisdiction. The question of subject matter jurisdiction is a preliminary question of law, which this court may address as a motion for summary judgment.

ATS filed this action citing 28 U.S.C. § 1332(a), diversity jurisdiction. ATS is a Wisconsin corporation with its principal place of business in Milwaukee and Edward and Sandra Notz are citizens of Illinois. Hence, diversity is clear. Next, the parties agree the amount in controversy exceeds $75,000. In addition, the Notz Interests do not contest that this proceeding is a "civil action" as defied by § 1332.

The question of jurisdiction, however, rests on whether the state court forum specified by Wisconsin Statutes § 180.1330(2) qualifies as a contractual forum selection clause and bars this court from exercising jurisdiction over the appraisal claim. In the event a minority shareholder dissents from a fundamental corporate transaction, Wisconsin law, like the law of many states, sets forth the procedure by which the minority shareholders

8

can compel the corporation to purchase their shares.  *See Kademian v. Ladish Co.*, 792

F.2d 614, 629 (7th Cir. 1986).  If the shareholder and corporation dispute the value of the

shares, fair value may be determined judicially under § 180.1330:

> (1) If a demand for payment under § 180.1328 remains unsettled, the corporation shall bring a special proceeding within 60 days after receiving the payment demand under § 180.1328 and petition the court to determine the fair value of the shares and accrued interest.  If the corporation does not bring the special proceeding within the 60-day period, it shall pay each dissenter whose demand remains unsettled the amount demanded.
> (2) The corporation shall bring the special proceeding in the circuit court for the county where its principal office . . . is located. . . .
> (3) The corporation shall make all dissenters, whether or not residents of this state, whose demands remain unsettled parties to the special proceeding.
> (4) The jurisdiction of the court in which the special proceeding under sub. (2) is plenary and exclusive.  The court may appoint one or more persons as appraisers to receive evidence and recommend decision on the question of fair value.  An appraiser has the power described in the order appointing him or her or in any amendment to the order.  The dissenters are entitled to the same discovery rights as parties in other civil proceedings.

Wis. Stat. § 180.1330.  The purpose underlying specification of the court where appraisal

actions should be brought is to provide "one forum where all claims for appraisal may be

consolidated regardless of claimants' places of residence, thus eliminating a multiplicity of

actions in various courts which is harmful to corporation and shareholder alike." *Kademian*,

792 F.2d at 629 (quoting the Model Business Corporation Act § 81).

Here, it is obvious that ATS has not complied with the letter of § 180.1330(2)

inasmuch as this action was not filed in the Milwaukee County Circuit Court.  Thus, this

court must consider whether compliance with that jurisdictional provision is necessary for

this appraisal action to proceed.

9

While § 180.1330(2) specifies a state forum, "[a] state created claim, as a general matter, 'cannot be withdrawn from the cognizance of such Federal Court by any provision of state legislation that it shall only be enforced in a State Court.'" *TBK Partners, Ltd. v. W. Union Corp.*, 517 F. Supp. 380, 388 (S.D.N.Y. 1981) (*quoting Ry. Co. v. Whitton's Admin.*, 80 U.S. [13 Wall] 270, 285 (1872)).  State statutes that attempt to limit the enforcement of personal or property rights to state court venues have been rejected as unconstitutional "for over one hundred years both by the United States Supreme Court and lower federal courts."  *Wrigglesworth v. Brumbaugh*, 121 F. Supp. 2d 1126, 1139 (W.D. Mich. 2000).

> The reason for rejecting such an argument is obvious.  Were the federal courts limited in their exercise of diversity and supplemental jurisdiction by state statutes assigning a state forum, then the exercise of that jurisdiction, as contemplated by Congress and the Framers of the Constitution, could be frustrated in a manner inconsistent with the pre-eminence of federal law.

*Id.* (rejecting the argument that federal diversity jurisdiction was usurped by a state employment compensation law provision that required the action to be brought in the "circuit court for the district in which such public employer is located"); *see Terral v. Burke Constr. Co.*, 257 U.S. 529 (1922) ("[A] state may not, in imposing conditions upon the privilege of a foreign corporation's doing business in the State, exact from it a waiver of the exercise of its constitutional right to resort to the federal courts. . . ."); *Whitton's Admin*, 80 U.S. [13 Wall.] at 286 (holding that a state may not limit to its own state courts an action to enforce personal or property rights created by state law).

This principle has been asserted in federal cases addressing state appraisal statutes.  For example in *Mullen v. Academy Life Insurance Co.*, 705 F.2d 971 (8th Cir.

10

1983), the Eighth Circuit held that a New Jersey Statute that specified a state court forum for appraisal actions could not divest federal courts of diversity jurisdiction. The appeals court noted that a state statute that divests a federal district court of diversity jurisdiction "runs contrary to the long-established rule that states may not limit federal jurisdiction." *Id.* at 975. "If the New Jersey statute is to be construed to exclude the jurisdiction of federal courts, a serious constitutional question would arise." *Id.*

The Notz Interests attempt to sidestep this general principle by rooting their argument in contract. They assert that "[t]he venue provision of Wis. Stat. § 180.1330(2) represents an enforceable contractual agreement between the parties precluding the exercise of this court's jurisdiction." (Defs.' Mem. in Opp. 13.) In other words, because the Wisconsin Business Corporation Law (Wis. Stats. chs. 180-188) is generally deemed part of the corporate charter, § 180.1330 is part of the binding contract between ATS and its shareholders, and thereby ATS waived its right to federal court jurisdiction over appraisal proceedings.

For support, the Notz Interests look to *Middleburg Training Center v. Firestone*, 477 F. Supp. 2d 719 (E.D. Va. 2007). In that case, the district court considered whether a Washington, D.C., shareholder could remove an appraisal action against a Virginia corporation to federal court. The statute at issue, Virginia Code Ann. § 13.1-740, is nearly identical to its Wisconsin counterpart:

> A. If a shareholder makes a demand for payment under § 13.1-739 that remains unsettled, the corporation shall commence a proceeding within 60 days after receiving the payment demand and petition the court to determine the fair value of the shares and accrued interest. If the corporation does not commence the proceeding within the 60-day period,

11

it shall pay in cash to each shareholder the amount the shareholder demanded pursuant to § 13.1-737 plus interest.

B. The corporation shall commence the proceeding in the circuit court of the city or county where the corporation's principal office, or, if none in the Commonwealth, where its registered office, is located. . . .

C. The corporation shall make all shareholders, whether or not residents of the Commonwealth, whose demands remain unsettled parties to the proceeding as in an action against their shares, and all parties shall be served with a copy of the petition. . . .

E. The jurisdiction of the court in which the proceeding is commenced under subsection B is plenary and exclusive. The court may appoint one or more persons as appraisers to receive evidence and recommend a decision on the question of fair value. The appraisers shall have the powers described in the order appointing them, or in any amendment to it. The shareholders demanding appraisal are entitled to the same discovery rights as parties in other civil proceedings. There shall be no right to a jury trial.

The court observed that in Virginia, general corporation law "is just as much a part of the contract between the corporation and its stockholders as are any other documents." *Id.* at 724 (*quoting Adams v. U.S. Distrb. Corp.*, 34 S.E.2d 244 (Va. 1945)). As a consequence, the court concluded that the statute requiring filing in "the circuit court of the county where the corporation's principle [sic] office is located" constituted a forum selection clause. Therefore, the defendant shareholder was bound by contract to that clause due to her purchase of stock in a Virginia corporation. *Id.*[2]

_____

[2] The *Middleburg* court distinguished *Mullen*, noting that *Mullen* "involved a statute permitting state jurisdiction over appraisal actions, and hence the statute could not be construed as a contractual choice of forum." *Middleburg*, 477 F.3d at 726 n.17. It is true that the *Mullen* court did not address the question in terms of contract; however, the statute at issue in *Mullen* appears to designate the Superior Courts of New Jersey as the forum for appraisal actions. *See* N.J.S.A. § 14A:11-8 (1983). In *Mullen*, the circuit court addressed the district court's holding that (1) the appraisal remedy was the exclusive remedy for minority shareholders dissenting from a merger and (2) that the state court specified by statute was the exclusive forum. The Eighth Circuit separated the district court's decision into these two parts, and held that under the New Jersey law, which governed the issue, the appraisal action was probably not the exclusive remedy for dissenting shareholders who may seek, instead of simple appraisal, a breach of fiduciary duty cause of action. It then noted that it could not conclusively determine whether the pro se plaintiff-shareholder was filing an appraisal action under the specified appraisal statute or filing a breach of fiduciary duty action. *Mullen*, 705 F.2d at 975. In a separate section of the opinion, the court approached the exclusivity of the state forum designated by N.J. Stats. Ann. § 14A:11A-8, concluding that "the New Jersey statute should not be construed

With *Middleburg* in mind, the Notz Interests submit that Wisconsin case law demonstrates that the Wisconsin Business Corporation Law is incorporated into the contract between shareholder and corporation. In *Milwaukee Sanitarium v. Swift*, 300 N.W. 760, 764 (Wis. 1941), the Wisconsin Supreme Court noted that the statutes governing corporations are "are as effectively part of the certificates of stock issued thereby and of the corporate charter as though printed therein." *See also id.* ("The appellant, as did all other stockholders, took her stock subject to the provisions of the statute."); *Johnson v. Bradley Knitting Co.*, 280 N.W. 688, 694 (Wis. 1938) (holding that amendments made by the majority pursuant to the procedure authorized by statute were "valid and binding upon the plaintiff who consented thereto in advance when he became a member and stockholder of the defendant company").

Here, we have a statutorily prescribed procedure for appraisal actions which, under Wisconsin law and in the absence of fraud or breach of fiduciary duty, provides the exclusive remedy for dissenting stockholders. *Pritchard v. Mead*, 455 N.W.2d 263, 266 (Wis. 1990) (interpreting the precursor to the current appraisal statute). The legislature saw fit to designate one judicial forum for the appraisal proceeding to "settle all the dissenters' demands for payment." *Kohler Co. v. Sogen Intern. Fund, Inc.*, 608 N.W.2d 746, 751 (Wis. Ct. App. 2000). This is emphasized by Wis. Stat. § 180.1330(3), which requires all remaining dissenters to be joined as parties to the proceeding.

The exclusive, statutory remedy of an appraisal proceeding pursuant to directives of the statute certainly fall within the contractual relationship between stockholder

---

to foreclose the exercise of federal diversity jurisdiction." *Id.* at 972.

and corporation. However, the appraisal action, while deemed a special proceeding in the statute, is nonetheless a judicial action to enforce property rights established by state law. *See Pritchard*, 455 N.W.2d at 268 ("The limitations imposed by sec 180.72, Stats., seek to enforce *property rights* not to abrogate them, and they are reasonable." (emphasis added)). The statute-based forum selection provision, therefore, offends the same federal law principle as would any law designating a Wisconsin circuit court as the exclusive jurisdiction for (or precluding removal of) litigation to enforce personal or property rights. As stated by the U.S. Supreme Court in *Railway Company v. Whitton's Administrators*, 80 U.S. [13 Wall.] at 286, "[w]henever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation."

Cloaking the matter as a contractual forum selection clause agreed to by the parties through involuntary waiver cannot bypass the fact that it is a state-statute-based forum selection clause. Under the "involuntary waiver" reading promoted by the Notz Interests, a corporation has no choice but to agree to litigate appraisal actions in Wisconsin courts if it wishes to do business in Wisconsin. In *The Bremen v. Zapata Off-Shore, Co.*, 407 U.S. 1, 15 (1972), to which both parties cite for support, the U.S. Supreme Court directed that ordinarily contractual forum selection clauses should be enforced in the absence of "a strong showing that it should be put aside." However, the court repeatedly referenced the concepts of *agreement* and *negotiation* between the parties in setting a neutral judicial forum for disputes. *Id.* at 12 ("The choice of forum was made in an arms-length negotiation by experienced and sophisticated businessmen. . . ."); *id.* at 12-13

14

("There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud undue influence, or overwhelming bargaining power, such as that involved here, should be given full effect."); *see also Weidner Comm., Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302, 1309 (7th Cir. 1988) (highlighting the Supreme Court's deference to forum selection clauses that are "freely negotiated" at "armslength . . . by experienced and sophisticated businessmen").

Further, while the Court in *Zapata Off-Shore* noted that "[n]o one seriously contends in this case that the forum-selection clause 'ousted' the District Court of jurisdiction over Zapata's claims," it distinguished such an agreement from the situation in *Home Insurance Co. v. Morse*, 87 U.S. [20 Wall] 445 (1874) "in which a state statutory requirement was viewed as imposing an unconstitutional condition on the exercise of the federal right of removal." *Zapata Off-Shore,* 407 U.S. at 12 n.10. In *Morse*, the Court held as "repugnant to the constitution" a Wisconsin statute "which enacts that a corporation organized in another State shall not transact business within its limits, unless it stipulates in advance that it will not remove into the Federal courts any suit that may be commenced against it by a citizen of Wisconsin." *Morse*, 87 U.S. [20 Wall] at 453. In *Donald v. Philadelphia & Reading Coal & Iron Co.*, 241 U.S. 329, 333 (1916), the Court again addressed the issue and invalided a Wisconsin statute that revoked the license of foreign corporations doing business in the state if they remove actions to federal court. The High Court stated "[t]he judicial power of the United States as created by the Constitution and provided for by Congress pursuant to its constitutional authority is a power wholly independent of state action, and which therefore the several states may not, by any

15

exertion of authority in any form, directly or indirectly, destroy, abridge, limit, or render inefficacious."

The jurisdictional issue in this case presents more as a state statutory bar on the ability of parties to litigate property rights in federal court than a contractual agreement to litigate disputes in a Wisconsin circuit court. Further, a federal district court is competent to conduct an appraisal proceeding pursuant to Wisconsin Statutes § 180.1330, and the public policy goal of consolidating the appraisal proceeding in one judicial forum is satisfied in a district court as the statute requires all outstanding dissenters to be joined in the action. *See TBK Partners,* 517 F. Supp. at 388 ("The objectors cite New York Business Corporation Law section 623(h)(3) which confers jurisdiction on the Supreme Court for the judicial district wherein the corporation's offices are located 'exclusive' jurisdiction over appraisal proceedings. That is no more, however, than a venue provision designed to put an appraisal proceeding in one and only one judicial district per each company and does not purport to be a grant of 'exclusive' state court jurisdiction in the sense contended by the objectors."). Thus, this court concludes that Wis. Stat. § 180.1330(2) does not bar this court from exercising diversity jurisdiction over this action.

III. Failure to Properly Commence a Special Proceeding in the Wisconsin Circuit Court (Defense/Claim # 4)

The Notz Interests' fourth affirmative defense/claim which is related to subject matter jurisdiction and is addressed next. It asserts that "Plaintiff failed to properly commence a special proceeding in the circuit court for the county in which its principal office is located." Specifically, the Notz Interests request summary judgment citing ATS's failure to initiate this proceeding in Milwaukee County Circuit Court as required under Wis.

16

Stat. § 180.1330(2). According to § 180.1330(1), "[i]f the corporation does not bring the special proceeding within the 60-day period, it shall pay each dissenter whose demand remains unsettled the amount demanded."

The Notz Interests point to *Pritchard v. Mead*, in which the Wisconsin Court of Appeals found the plaintiff, a dissenting shareholder, failed to comply with the statutorily prescribed appraisal proceedings when seeking fair value for his shares, and therefore forfeited his right to judicial valuation of his shares. 455 N.W.2d at 436. The court noted that "[i]f statutory remedies are provided, the procedure prescribed by statute must be strictly pursued to the exclusion of all others." *Id.*

However, as discussed above, the forum selection clause of § 180.1330(2) cannot be construed as barring a party from litigating property rights in federal court. Therefore, ATS's action in this court is valid under § 180.1330, so long as all other filing requirements of the state are met.

The Notz Interests do not contest that the action was brought within the required time frame or that all proper parties were joined; they argue only that the letter of the statute (or the alleged contract) was not complied with and that ATS should be penalized. Consequently, the court will not invoke the statutory penalty for noncompliance in § 180.1880(1) if compliance with the letter of that provision is not necessarily required under the circumstances. Therefore, ATS's motion as to the Notz Interests' fourth defense/claim is granted, and the Notz Interests' request for summary judgment based on ATS's failure to file this action in Milwaukee County Circuit Court will be denied.

IV.  Abstention (Defense/Claim # 2)

In their second affirmative defense/claim, the Notz Interests contend that this court should dismiss or stay this case under the *Colorado River* abstention doctrine pending final disposition of pending state court proceedings by Mr. Notz against multiple defendants, including ATS.  (Defs.' Resp. Br. 15.)

As stated by the U.S. Supreme Court in *Colorado River Water Conservation District v. United States*, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule: The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  424 U.S. 800, 813 (1976).  In determining whether to issue a stay under the *Colorado River* doctrine, a two-part inquiry is performed.  "First, the court must determine whether the concurrent state and federal actions are actually parallel.  Then once it is established that the suits are parallel, the court must consider a number of nonexclusive factors that might demonstrate the existence of 'exceptional circumstances.'" *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006) (*quoting Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004)).  "If there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR Intern., Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotations omitted).

Suits are considered parallel when "'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *AXA*

18

*Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (*quoting Cominity & Iatarola, Ltd., v. Behnke Warehousing, Inc.*, 962 F.2d 698 (7th Cir. 1992)). In making this determination, a court should "examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer*, 456 F.3d at 752. However, "[i]t is not necessary that there be formal symmetry between the two actions." *Id.* The question to ask is whether there is a "'substantial likelihood' that the foreign litigation will dispose of all claims presented in the federal case." *AAR Intern., Inc.*, 250 F.3d at 518.

In this case, the pending state action was initiated by Mr. Notz as plaintiff on September 14, 2006. The defendants are ESG, ATS,[3] and four individually named officers and directors of ATS. (Defs.' Mem. in Opp. 18.) The state suit includes two causes of action for breach of fiduciary duty against ESG and the individual officers and directors of ATS and a third cause of action requesting judicial dissolution for shareholder oppression under Wisconsin law. (Ans. Ex. A.) The circuit court dismissed Mr. Notz' breach of fiduciary duty claims because they were a derivative action and could not be brought by an individual shareholder. (Pl.'s Proposed Findings of Fact ¶¶ 35-37.) The dissolution claim was not dismissed. (*Id.* ¶ 38.) The circuit court's decisions on those matters are on interlocutory cross-appeal to the Wisconsin Court of Appeals. (Defs.' Additional Proposed Findings of Fact ¶ 5.)

The parties to this action and the state proceeding are not identical—the state court action includes additional defendants, though connected to ATS, and lacks the

---

[3] ATS was apparently joined as a necessary party to the state court action in the Amended Complaint for Mr. Notz's claim for judicial dissolution. (Pl.'s Br. in Supp. 17 n.9.)

involvement of Ms. Notz. Even so, the presence of additional parties does not necessarily disrupt a finding of identity of parties, *AAR Intern., Inc.*, 250 F.3d at 517.

Under Wisconsin law, in the absence of fraud or breach of fiduciary duty, the appraisal action is the exclusive judicial remedy for a shareholder objecting to a merger plan. *Pritchard*, 455 N.W.2d at 436. In an appraisal action, the court may consider all relevant factors including "unfair dealing affecting the value of a dissenter's shares" as well as any wrongful actions "in gauging or impeaching the credibility of majority shareholders with respect to their valuation contentions." *See HMO-W, Inc. v. SSM Health Care Sys.*, 2000 WI 46, ¶ 56, 234 Wis. 2d 707, ¶ 56, 611 N.W.2d 250, ¶ 56. The third affirmative defense/counter claim by the Notz Interests is that the alleged misconduct of those in control of ATS impacted the value of his shares. (Ans. 10-11).

Abstention requires a finding that there is a "substantial likelihood" that the state litigation "will dispose of *all* claims presented in the federal case." *AAR Intern., Inc.*, 250 F.3d at 518 (emphasis added). To this end, the Notz Interests argue that the court has "broad equitable power" to grant relief in the state court proceeding, such that "it is likely that the state court . . . would opt to provide some kind of compelled third party sale, or compelled buy-out with its own valuation proceeding, which would effectively dispose of or render moot the issues in this litigation." (Defs.' Mem. in Opp. 17-18.)

In considering the nature of the two claims, it is apparent that distinct issues are presented. The appraisal proceedings set forth in § 180.1330 provides an exclusive remedy for judicial determination of fair value of shares following a corporate transaction defined in § 180.1302, and may include consideration of all relevant factors impacting share values, *see HMO-W, Inc.,* 2000 WI 46, 234 Wis. 2d 707, 611 N.W.2d 250. On the

other hand, the pending state court action does not assure the parties that their rights under the statue will be considered. Given the "general presumption against abstention," *AXA Corporate Solutions*, 347 F.3d at 278, resting resolution of the parallel-issues on the general equitable authority of the state court to dispose of the breach of fiduciary duty and shareholder oppression claims in a way that *might* also dispose of the appraisal issues before this court is unsatisfactory. *See Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005) ("Any doubt regarding the parallel nature of the state court suit should be resolved in favor of exercising jurisdiction."); *AAR Intern., Inc.*, 250 F.3d at 518 (the district court should not abstain from exercising jurisdiction if "there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties"). There is substantial doubt that the state court action for breach of fiduciary duty and shareholder oppression (judicial dissolution) would effectively dispose of the appraisal matter at issue here; thus, this court must not abstain from exercising jurisdiction.

Even if the pending case and the state case could be considered parallel, the *Colorado River* factors would not require a different conclusion. As indicated earlier, if the suits are considered parallel, the district court must consider a series of nonexclusive factors in deciding whether "exceptional circumstances" justify abstention. The Seventh Circuit listed ten factors that must be considered:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained in the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the

21

> presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*AXA Corporate Solutions*, 347 F.3d at 278. The first two factors are nonissues in this proceeding or work against abstention: the court has not exercised jurisdiction over property (factor 1); this federal forum is just as convenient as the state forum two miles to the west (factor 2); concurrent jurisdiction is present (factor 8); and no party asserts or challenges the applicability of factor 10. In addition, several factors work themselves out of the equation based on the unique procedural history: the plaintiff is the one seeking federal jurisdiction (and the defendant is the nonresident) (factor 6); and removal is not a factor in the state suit—the nonresident plaintiff in the state action brought the suit against resident defendants in Wisconsin court (factor 9), *see* 28 U.S.C. § 1441(b).[4]

Although state law governs these proceedings, this court gains jurisdiction through diversity, thereby rendering factor 5 of little weight. Furthermore, the state court action was filed in April 2006—prior to the May 17, 2007, merger with ESG—and this appraisal action could only be brought after the merger (factor 4) in accordance with the conditions precedent set forth in § 180.1330.

Discovery is commencing in this case and the state proceeding has progressed further (factor 7), thereby favoring abstention.[5] In addition, as noted above, there appears to be a risk that misconduct issues may be considered by both courts (factor

---

[4] The Notz Interests' contention that such factors work in their favor because "ATS can claim no disadvantage from litigating claims in the state court system" undershoots the standard for abstention. (See Defs.' Mem. in Opp. 19.) In fact, the non-impact of these factors works against abstention in that they do not contribute to overcoming the substantial burden in demonstrating exceptional circumstances.

[5] Though the state court action apparently did not proceed much further, as the circuit court dismissed Mr. Notz's breach of fiduciary duty claims, which are on appeal, and stayed discovery. (Def.'s Mem. in Opp. 19 & 19 n.8.)

22

3). However, this action is only concerned with the impact that any misconduct has on the value of shares whereas the state court proceeding which arises from breach of duty and shareholder oppressions claims can only address appraisal indirectly.[6]    Conversely, "[s]hould the [state] court complete its proceedings first, the parties will undoubtedly call that to the district court's attention and consider whether the doctrine of issue preclusion applies" to any specific facts that may be relevant to both suits.  *AXA Corporate Solutions*, 347 F.3d at 280.

In light of "the admonition from the Supreme Court not to stay or dismiss actions without strong justification to do so," the lack of parallel suits and consideration of the *Colorado River* factors do not reveal "exceptional circumstances" or the "clearest of justifications" under which this court should surrender its duty to exercise jurisdiction.  *See AAR Intern.*, Inc., 250 F.3d at 517-518 ("[O]ur task in determining whether abstention is appropriate is "not to find some substantial reason for the exercise of federal jurisdiction . . . but rather to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction.") (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)).

---

[6] The appraisal action is an exclusive, limited judicial remedy.  Relatedly, it is undecided in Wisconsin whether separate claims can be consolidated with an appraisal proceeding.  *See HMO-W, Inc.*, 2000 WI 46, ¶¶ 49-51, 234 Wis. 2d 707, ¶¶ 49-51, 611 N.W.2d 250, ¶¶ 49-51 (declining to address whether distinct misconduct claims, such as those of fraud or breach of fiduciary duty, may be consolidated with an appraisal proceeding).

V. Misconduct by ATS Officers and Directors (Defense/Claim # 3)

As noted above, the Notz Interests' third defense/claim charges that the value of their ATS shares "was directly reduced by the misconduct of those in control of Albert Trostel & Sons Company." Seven actions are listed as constituting misconduct by ATS:

> (a) The decision by the board of directors of Albert Trostel & Sons Company not to pursue an acquisition of Dickten & . . . [Masch] Manufacturing Company, but instead to allow the majority shareholder of Albert Trostel & Sons Company, the Everett Smith Group, Ltd., to make that acquisition;
>
> (b) The decision by the board of directors of Albert Trostel & Sons Company to sell the operating assets of a wholly-owned subsidiary, Trostel Specialty Elastomers Group ("SEG") to the Everett Smith Group, Ltd.;
>
> (c) Upon information and belief, improper increases in the SG&A expenses of ATS in 2002 and 2003 and thereafter through (i) increased "management fees" paid by ATS to the Everett Smith Group, Ltd., (ii) excessive compensation and benefits paid to officers and directors of ATS, and/or (iii) other means;
>
> (d) The failure of Albert Trostel & Sons Company, in adopting the D&P valuation as part of the merger proceedings, to discount and eliminate any management fees paid by ATS to the Everett Smith Group, Ltd., and other similar expenses and costs, that would not be incurred after ATS became a wholly-owned subsidiary of the Everett Smith Group, Ltd.;
>
> (e) The improper co-mingling of ATS pension funds with pension funds run by and through the Everett Smith Group, Ltd.;
>
> (f) Upon information and belief, the misappropriation of other expenses shared by Albert Trostel & Sons Company and the Everett Smith Group, Ltd.; and
>
> (g) Knowing of the pending state court litigation and the decision of the trial court in that proceeding that the oppression claim stated a cause of action and that the potential relief in such an oppression action includes the sale of ATS's interests and/or the stock of ATS, failed to tender the same to independent third parties and sell the same to one such independent third party.

(Ans. 10-11.)

At the outset, the court notes that the parties are at odds regarding the nature of the third defense or claim given that the appraisal proceeding is a limited, exclusive remedy under Wisconsin law. (*See* Defs.' Mem. in Opp. 20 (stating that the allegations of the third defense/claim "are more in the nature of a 'claim' than an affirmative defense")). Indeed, the Wisconsin Supreme Court has refrained from deciding whether claims independent of the valuation of shares can be consolidated with an appraisal action. *See HMO-W, Inc.*, 2000 WI 46, ¶¶ 49-51, 234 Wis. 2d 707, ¶¶ 49-51, 611 N.W.2d 250, ¶¶ 49-51. ATS addresses the contentions in subsections "3(a)-(f)" as a group and submits that they should be dismissed because they give rise to derivative causes of action,[7] which cannot be interjected as defenses or claims in an appraisal action. (Pl.'s Br. in Supp. 22.) It then separately challenges "3(g)" as insufficient no matter whether a claim or defense. In response, the Notz Interests avoid categorization of the defense/claim and focus their argument on the impact such misconduct has on the value of shares in an appraisal action, citing *HMO-W, Inc. v. SSM Health Care System*, 2000 WI 46, 234 Wis. 2d 707, 611 N.W.2d 250. With this in mind, the court considers ATS's motion as a motion to strike pursuant to Rule 12(f), which will be granted only if the assertions in the third defense/claim have "no possible relation to the controversy." *Gonzalez v. City of Chi.,* 888 F.Supp. 887, 890 (N.D.Ill. 1995). In other words, the plaintiff's motion will be granted if the assertions are clearly irrelevant to the valuation of shares in an appraisal action.

---

[7] "A derivative action differs from ordinary commercial litigation and from a representative action such as a class action. In a derivative action, the claims belong to the corporation, not to the complaining shareholder. The complaining shareholder is challenging, on behalf of the corporation that has been unwilling to bring the suit, specific corporate conduct." *Einhorn v. Culea*, 235 Wis.2d 646, 654, 612 N.W.2d 78, 83 (2000); *see also* Wis. Stat. § 180.0740(2).

ATS contends that the Notz Interests cannot assert "3(a)-(f)" as defenses in an appraisal action because to do so would "impermissibly end-run the Wisconsin legislature's decision to give corporate boards and their independent SLC's—not the court—final authority to decide whether to pursue such claims." (Pl.'s Br. in Supp. 26.) For support, ATS points to *Einhorn v. Culea*, 2000 WI 65, 235 Wis.2d 646, 612 N.W.2d 83. In *Einhorn*, the Wisconsin Supreme Court discussed the role of a special litigation committee appointed by a corporate board in evaluating and limiting derivative claims:

> Under Wis. Stat. § 180.0744, the corporation may create a special litigation committee consisting of two or more independent directors appointed by a majority vote of independent directors present at a meeting of the board of directors. The independent special litigation committee determines whether the derivative action is in the best interests of the corporation. If the independent special litigation committee acts in good faith, conducts a reasonable inquiry upon which it bases its conclusions and concludes that the maintenance of the derivative action is not in the best interests of the corporation, the circuit court shall dismiss the derivative action. The statute thus requires the circuit court to defer to the business judgment of a properly composed and properly operating special litigation committee.

*Id.* 2000 WI 65, ¶ 20, 235 Wis.2d 646, ¶ 20, 612 N.W.2d 83, ¶ 20. Consequently, ATS maintains that the charges of the Notz Interests' in "3(a)-(f)" are irrelevant to the valuation of the shares because the SLC considered the claims, ruled against pursuing the claims, and Mr. Notz never challenged the SLC pursuant to § 180.0744(4). Because, as ATS asserts, the SLC's conclusion is final, and the Notz Interests has no potential claim on which to rely, the allegations are irrelevant in the appraisal proceeding. Further, because the Notz Interests' allegations do not relate directly to the corporation's valuation of the shares, it is argued that they are deemed irrelevant under *HMO-W, Inc.* (*See* Pl.'s Reply Br. 12.)

However, the appraisal remedy is rooted in equity, and the Wisconsin legislature sought to ensure that minority shareholders receive fair value for their shares if they objected to particular corporate actions, *HMO-W, Inc.*, 2000 WI 46, ¶¶ 17, 27-28, 234 Wis. 2d 707, ¶¶ 17, 27-28, 611 N.W.2d 250, ¶¶ 17, 27-28. Thus, ATS's attempt to prohibit consideration of any allegations of misconduct sweeps too broad. The court has a duty to "consider 'all relevant factors' . . . affecting the value of a dissenter's shares." *Id.* ¶ 53. "When assertions of misconduct such as unfair dealing are intertwined with the value of shares subject to appraisal, a shareholder may make these assertions within the context of an appraisal action." *Id.* ¶ 52. Therefore, to the extent that the Notz Interests can show that the misconduct alleged in subsections "3(a)-(g)" is intertwined with the value of shares immediately prior to the merger, see § 180.1301(4);[8] *id.* ¶ 31, or relevant to "gauging or impeaching the credibility of majority shareholders with respect to their valuation contentions," *id.* ¶ 53, such misconduct would rightly be considered by the court.[9] *See also id.* ¶ 55 ("A fair value determination is necessarily a fact-specific process.").

---

[8] Wisconsin Statutes § 130.1301(4) defines fair value: "'Fair value', with respect to a dissenter's shares other than in a business combination, means the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects . . . . "

[9] The court notes that this case is passing the pleading stages and discovery is commencing. Relevant to ATS's motion to strike/dismiss defense/claim "3" is a finding that the SLC was independent, acted in good faith, conducted a reasonably inquiry, and based its conclusions on that reasonable inquiry. *See* Wis. Stat. § 180.0774(4). The defendants do not admit (or deny sufficient knowledge at this time) as to the independence of the SLC, its investigation, or its conclusions. (Defs.' Responses to Pl.'s Proposed Findings of Fact 4-7.) It is true that the Notz Interests have not challenged the SLC's conclusions pursuant to § 180.0744(4), and the court makes no conclusions at this time as to whether decisions of the SLC can possibly impact the valuation of stock. However, given that the parties do not agree on the facts or whether these facts are relevant in an appraisal, the court will postpone determinations on any possible factual questions until after discovery has progressed to ensure potentially relevant material is not excluded from consideration prematurely.

## V. Defense/Claim # 5

ATS seeks to dismiss the fifth defense/claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, a more definitive statement under Rule 12(e).

> (5) Upon information and belief, Albert Trostel & Sons Company acted arbitrarily, vexatiously and not in good faith with respect to the rights provided by Chapter 180 of the Wisconsin Statutes.

ATS maintains that the aforegoing assertion is "vague and conclusory" and fails to state a claim. The Notz Interests respond that this is an affirmative defense with factual support provided in their Answers and Affirmative Defenses/Claims. Again, the standard of review as to this defense/claim is in question. Thus, the court will entertain the motion as one to strike, and will grant the motion as to the fifth defense/claim if it is clearly irrelevant to the valuation of shares in this appraisal action.

As previously discussed, in the context of this appraisal proceeding, the court will entertain assertions of misconduct which are intertwined with the value of shares subject to appraisal. *See* Part IV, *supra*. Hence, the court should not strike this defense at this stage so as to not unnecessarily exclude potentially relevant material from consideration in this appraisal proceeding. Further, the Notz Interests point to factual assertions in the pleadings supporting this defense. A more definitive statement under Rule 12(e) is, therefore, unwarranted.

## VI. Conclusion

In sum, the court finds that is has jurisdiction over this appraisal proceeding. Therefore,

IT IS ORDERED that first defense/claim is dismissed.

28

IT IS FURTHER ORDERED that the defendant's request for summary judgment in their favor is denied, and that the fourth defense/claim is dismissed.

IT IS FURTHER ORDERED that the second defense/claim is dismissed as abstention pursuant to *Colorado River* is not appropriate under the circumstances.

IT IS FURTHER ORDERED that ATS's motion to strike/dismiss the third and fifth defenses/claims is denied.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2008.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE